IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

**FILED**

AUG 10 2000

CLERK

---

| | |
|---|---|
| PATENTWIZARD, INC. AND MICHAEL S. NEUSTEL<br><br>PLAINTIFFS,<br><br>v.<br><br>KINKO'S, INC.<br><br>DEFENDANT. | CIV. 00- 4143<br><br><br>COMPLAINT<br>&<br>DEMAND FOR JURY TRIAL |

---

Plaintiffs, PatentWizard, Inc. and Michael S. Neustel, by and through their attorneys, Hynes and McCaulley Law Firm, Prof. LLC, for their complaint against the defendant, Kinko's, Inc., state and allege that:

### PARTIES TO THE ACTION

1.  Plaintiff PatentWizard, Inc. (hereinafter "PatentWizard") is a North Dakota Corporation with its principal place of business at 2534 South University Drive, Suite No. 4 Fargo, North Dakota, 58103. PatentWizard sells a software program entitled "PatentWizard 2.0" via the Internet.

2.  Plaintiff Michael S. Neustel (hereinafter "Neustel") is an individual having a residence of 4603 Timberline Drive, Fargo, North Dakota 58104. Neustel is an attorney licensed with the United States Patent & Trademark Office (hereinafter "USPTO") and with the State Bar Association of North Dakota. Neustel specializes in the practice of patent law and is the creator of the PatentWizard 2.0 software program.

3.    Defendant Kinko's, Inc. (hereinafter "Kinko's"), has its world headquarters at 255 West Stanley Avenue, Ventura, California, USA, 93002-8000. Defendant operates more than nine hundred (900) retail locations in the United States, Canada, the Netherlands, Japan, South Korea, Australia, the United Arab Emirates, China and Great Britain.

## NATURE OF ACTION

4.    This is an action for negligence, negligent and intentional spoliation of evidence, and aiding and abetting a tort.  These causes of action arise from the Defendant Kinko's failure to adequately monitor, log, or otherwise record the identity and activities of Defendant's customers who access the Internet through computers owned, operated, and controlled by Defendant Kinko's at various locations worldwide.

## JURISDICTION

5.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) (diversity of citizenship).

6.    The amount in question herein exceeds $75,000, exclusive of interest and costs.

## VENUE

7.    This Court has venue over this action pursuant to 28 U.S.C. § 1391(a) (a judicial district where any defendant resides).

8.    Defendant Kinko's resides in this District pursuant to 28 U.S.C. § 1391(c) (corporation resides in any district where it is subject to personal jurisdiction) as the defendant maintains a place of business in this District at 3200 South Louise Ave Sioux Falls, SD 57106-0703.

## BACKGROUND OF THE PARTIES

9.  Plaintiff PatentWizard markets a software program created by Plaintiff Neustel entitled "PatentWizard 2.0." The PatentWizard 2.0 software program assists businesses and inventors in drafting and filing their own provisional patent application to be filed with the USPTO. PatentWizard has a commercial web site located at the URL address of www.patentwizard.com.

10. Plaintiffs PatentWizard and Neustel extensively market their respective products and legal services through PatentCafe.com, Inc. (hereinafter "PatentCafe") having a URL address of www.patentcafe.com with advertisements, articles, and electronic communication through chat rooms.

11. PatentCafe is the largest and most popular patent law related web site upon the Internet. PatentCafe is promoted extensively upon the Internet and in conventional media.

12. PatentCafe receives significant Internet traffic from visitors specifically seeking patent law related information, products, software and services.

13. PatentCafe is the largest distributor of the PatentWizard 2.0 software program for Plaintiff PatentWizard.

14. PatentCafe provides a popular "chat" every Tuesday where a selected expert discusses a particular topic relating to inventors with a plurality of guests that lasts approximately two hours.

15. PatentCafe records the dialog that takes place during each chat and posts this dialog in a complete transcript that is posted upon www.patentcafe.com for other inventors to read that visit PatentCafe upon the Internet.

16. Plaintiff Neustel is an attorney licensed in the State of North Dakota and in front of the United States Patent & Trademark Office.

17. Plaintiff Neustel is the sole principal in the law firm of Neustel Law Offices, Ltd., which owns and operates PatentWizard.

18. Plaintiff Neustel is a nationally recognized patent attorney who founded the National Inventor Fraud Center, Inc. (www.inventorfraud.com). Plaintiff Neustel is an active advocate for inventors giving countless hours to the inventing community upon the Internet and other forums.

19. Plaintiffs PatentWizard and Neustel have a strong reputation and presence upon the Internet.

20. Plaintiff Neustel is a frequent writer for the only national inventors' magazine in the United States entitled *Inventors' Digest* which also promotes PatentWizard 2.0.

21. Plaintiff Neustel enjoys nationwide publicity for his pro bono work in protecting individual inventors from fraudulent invention promotion companies and providing free advice to inventors via various Internet forums. Plaintiff Neustel has been quoted by *The Wall Street Journal, Newsweek, Newsday* and various other well-known news sources. Plaintiff Neustel also serves as a reliable source of information regarding inventor issues for various news sources including CNN, NBC Nightly News, Dateline NBC, 20/20 and various other popular news programs.

22. Plaintiff Neustel has developed numerous web sites and actively promotes himself and his business ventures extensively upon the Internet through www.patent-ideas.com, www.inventorfraud.com, www.freepatentforms.com, www.internetlawtoday.com, www.crazypatents.com, and www.patentdatabase.com that together establish a family of quality web sites devoted to provide trustworthy and educational information to inventors.

23. Plaintiff Neustel's web sites are directly linked to by many inventor and government web sites as a source of reliable and honest information.

24.   Plaintiffs PatentWizard and Neustel receive numerous referrals and customers/clients from their marketing activities upon the Internet.

25.   Plaintiffs' reputation upon the Internet and within the inventor community is a critical and key part of the business model for Plaintiffs PatentWizard and Neustel.

26.   Defendant Kinko's provides a various array of services to consumers that include document reproduction and assembly, business communication services, and computer rentals.

27.   Defendant Kinko's offers Internet access to the public (hereinafter "Renters") through computers (hereinafter "Rental Computers") that can be rented at various Kinko's locations, all as more fully appears in Exhibit A.  Exhibit A is attached hereto and incorporated herein by this reference.

28.   Defendant Kinko's is a privately held corporation and owns all of its retail locations.

## INDUSTRY KNOWLEDGE AND STANDARDS

29.   The "Internet" is generally comprised of a "global computer network" that allows computers from around the world to communicate with one another.

30.   Each computer communicating upon the Internet is identified by a unique Internet Protocol address (hereinafter "IP address") to distinguish it from other computers upon the Internet.

31.   Many companies called "Internet Service Providers" provide Internet access to consumers thereby allowing consumers to communicate with other computers on the Internet and view web pages.

32.   The Internet has grown exponentially and it is estimated that there are approximately 100 million individuals using the Internet.

33. As the usage of the Internet has grown significantly, so has the misuse of the Internet by unscrupulous individuals.

34. Unscrupulous individuals using the Internet are capable of shutting down large commercial web sites by using various methods. Activities by these individuals include hacking, spamming, defamation, unfair competition and various other unauthorized activities.

35. Many of these individuals attempt to remain "anonymous" by hiding their IP address when accessing the Internet. One method is to "spoof" their true IP address by utilizing the computer of a third person and thereby assuming that third persons Internet identity. An easier method of hiding their true identity is to gain physical control of a computer not registered to them by "renting" the computer.

36. Misuse of the Internet causes millions of dollars in damages every year to businesses and individuals.

37. Most Internet Service Providers know about the misuse of the Internet by certain individuals and the severe damages these activities can do.

38. Many Internet Service Providers have taken steps to monitor, log or otherwise track computer abuse and use on their respective computer systems to discourage misuse of the Internet and to assist those damaged by misuse of the Internet to locate and identify the perpetrator to help reduce similar actions in the future.

39. The industry standard for Internet Service Providers is to monitor, log, or otherwise track the activity of users who pay for Internet access or pay for the rental of computers with Internet access.

40. Log files track the activities on the Internet by logging the IP address of the computer that was accessed, the date and time the remote site was accessed, and the IP address of the computer that made the request.

41. Many Internet Services Providers cooperate with parties damaged by a user who accesses the Internet through their computer network.

42. Parties aggrieved by the conduct of Internet users bear the burden of enforcing their civil legal rights against such user(s).

## THE KINKO'S COMPUTER NETWORK

43. The Internet access provided to the Renters by Defendant Kinko's was developed, in whole or in part, by Lucent Technologies (hereinafter "the Kinko's Network").

44. Initially, Defendant Kinko's desired to implement public Internet access in all of their stores in ninety (90) days or less.

45. Over five hundred (500) of the Defendant's locations were in fact linked together within thirty (30) days after the project to construct the Kinko's Network began.

46. The Kinko's Network includes over 30,000 Rental Computers that can be utilized by individuals to access the Internet anonymously.

47. The Kinko's Network is designed for two types of users:  1.) Kinko's own private internal network and 2.) computer and Internet access to Renters of Rental Computers.

48. Since the creation of the Kinko's Network, Defendant Kinko's has been promoting itself as a leader within the Internet Service Provider industry.

49. Defendant Kinko's states on its web site that "[f]or decades Kinko's has been providing top-quality document and communications solutions to businesses and consumers worldwide."

50. Defendant Kinko's further states on their web site "you'll be using state-of-the art machines loaded with the latest, most-popular operating systems, software, typefaces and web browsers."

51.   The design of Kinko's Network ensures that internal company communications are kept separate and secure from customer Internet access.

52.   The Kinko's Network uses Ascend Pipeline 130 routers to provide one-to-many network address translation (NAT) and Dynamic Host Control Protocol (DHCP) server functionality.

53.   The Internet Protocol (IP) is a system wherein data is sent from one computer to another on the Internet.   Each computer on the Internet has an IP address that uniquely identifies it on the Internet and makes it possible to distinguish it from any other computer.

54.   The Ascend Pipeline routers use a single dynamically assigned IP address, compared to traditional methods of connecting routers to the Internet requiring dedicated IP addresses.

55.   Defendant Kinko's chose to implement the Ascend Pipeline routers rather than the traditional method of using routers to connect to the Internet because of the cost savings.

56.   The Kinko's Network further utilizes "IPSec," a tunneling and encryption algorithm, to provide a secure method to transport internal corporate data.

57.   The NAT technology enables devices on the Kinko's store local area networks to communicate with the Internet through a single shared IP address.

58.   While operating within the Kinko's Network, each Kinko's computer has a unique IP address.

59.   Computers on the Kinko's Network are given a random or common IP address for all Internet connections.

60.   The use of a random or common IP address throughout the network for outbound Internet traffic is a cost saving measure for Kinko's.

61. The Kinko's network is designed to protect Kinko's internal communications, but is not designed to protect the public from the activities of Renters using Rental Computers.

62. Defendant Kinko's intentionally and recklessly does not keep a record of the Renters who use the Rental Computers.

63. Renters are not required to provide a valid or verified name, address, or identification prior to using a Rental Computer.

64. Defendant Kinko's does not keep a record of the random or common IP addresses that are assigned to the Rental Computers utilized by Renters.

65. Defendant Kinko's refusal to maintain even basic records of its Rental Computers and Renters is financially motivated with complete disregard to the damage its inaction and malfeasance causes to third-parties.

## VIII.  THE KINKO'S NETWORK DOES NOT MEET INDUSTRY STANDARDS

66. The design of the network and lack of log files for Internet traffic and IP addresses for Rental Computers means that the Internet sites accessed by the Renters using Rental Computers cannot be traced back to any one of the Rental Computers on the Kinko's Network.

67. The Kinko's Network grants a "cloak of privacy" to Renters of the Rental Computers when the Renters access the Internet.

68. Defendant Kinko's cloak of privacy provided to Renters is generally not available with other nationwide Internet Service Providers.

69. The cloak of privacy, created through the use of a common IP address or random IP address for outbound Internet traffic, coupled with the lack of log files, makes it impossible for the public to identify the location of a Rental Computer on the Kinko's Network.

70. The cloak of privacy, created through the use of a common IP address or random IP address for outbound Internet traffic, coupled with the lack of log files, makes it impossible for the public to identify the identity or geographical location of a Renter on the Kinko's Network.

71. The technology is readily available for Defendant Kinko's to monitor, log, or otherwise record the Internet activities Rental Computers and Renters.

72. The technology to monitor, log, or otherwise record the Internet activities of computers accessing the Internet through an Internet Services Provider is in wide-spread usage by the Internet Service Provider industry.

73. The industry standard requires the maintenance of accurate and complete log files of computer users utilizing a computer network to reduce fraudulent usage and damage to others.

74. The industry standard that requires the maintenance of accurate and complete log files allows individuals, companies, and law enforcement to locate the perpetrator and hold that person accountable for their actions.

75. Defendant does not monitor, log, or otherwise record the activities of Renters who access the Internet through the Rental Computers at the various locations of the defendant.

**DEFENDANT KINKO'S PROFITS FROM ACTIVITIES OF ITS RENTERS**

76. Defendant Kinko's has full and complete knowledge that some of its Renters know that Defendant Kinko's does not maintain log files of its Rental Computers nor the identity of the Renters thereby allowing individuals to conduct illegal and unscrupulous activities anonymously through Defendant Kinko's Rental Computers.

77.   Defendant Kinko's has made the intentional and knowing decision to permit the cloak of privacy to persist on its network and has received the financial benefit of increased revenue from rentals of its Rental Computers.

78.   Defendant Kinko's charges $12 to $24 per hour for Renters to utilize its Rental Computers.

79.   Defendant Kinko's intentionally and knowingly aids, assists, and otherwise enables Renters who use the Kinko's Network to further their illegal and unscrupulous activities in return for the rental fee for use of the Rental Computer.

**THE KINKO'S NETWORK IS A CONDUIT FOR CYBER CRIMES AND OTHER UNSCRUPULOUS ACTIVITIES**

80.   Defendant Kinko's has received, and continues to receive, numerous inquiries from third parties and the Federal Bureau of Investigation regarding tortious or illegal computer activities of Renters using Rental Computers.

81.   Defendant Kinko's maintains records of every inquiry from a third party or government agency regarding illegal or improper use of their Rental Computers.

82.   Defendant Kinko's has full and complete knowledge that its intentional and reckless decision to not maintain log files of its Rental Computers severely hampers criminal investigations and civil actions against Renters of its Rental Computers.

83.   Defendant Kinko's has made an informed decision to disregard the legal rights of the public by intentionally and recklessly not maintaining accurate log files of Defendant's Rental Computers.

84.   Because of the cloak of privacy granted to Renters by the Kinko's Network and their store policies that fail to properly identify Renters, the Kinko's Network is a conduit for cyber crimes.

85.   Defendant Kinko's knowingly, and deliberately, and for its own financial benefit, provides Internet services in a manner that foreseeably allows users of its public computers to anonymously defame, damage, or illegally harm members of the public over the Internet.

86.   Defendant Kinko's has full knowledge that their network is used as a conduit for cyber crimes as has chosen to allow this condition and attraction to persist.

87.   Defendant Kinko's continues to profit from the use of Kinko's Network to perpetrate cyber crimes.

## KINKO'S HAS CONSISTENTLY REJECTED RECOMMENDATIONS TO LOG INTERNET TRAFFIC OF RENTERS

88.   Defendant Kinko's has full and complete knowledge that it should maintain accurate log files of its Rental Computers.

89.   Corporate officers of Defendant Kinko's have full and complete knowledge that Defendant Kinko's should maintain accurate log files of its Rental Computers.

90.   Defendant Kinko's has full and complete knowledge that it is technologically and economically feasible to maintain accurate log files of its Rental Computers and Renters.

91.   Defendant Kinko's has rejected requests to log Internet traffic because maintaining a logging system would not make Defendant Kinko's money.

92.   Defendant Kinko's would implement a logging system in the event they are subjected to significant legal liability or when the costs of not maintaining a system exceeds the cost of implementing the log files.

## PLAINTIFFS WERE HARMED BY THE KINKO'S NETWORK

93.  On or about May 9, 2000, Plaintiff Neustel hosted a chat room through PatentCafe for an open discussion with inventors about the recently released PatentWizard software.

94.  The chat room discussion was promoted by PatentCafe as a kick-off for sales of the PatentWizard software by PatentCafe.

95.  The chat room was a public forum where patent industry enthusiasts, inventors and peers were present.

96.  The chat room was hosted by Plaintiff Neustel with the business purpose of promoting the PatentWizard software and his private law practice.

97.  PatentCafe logs each of the chat room sessions and tracks the Internet Protocol address of each user that logs into the room.  Such log file is attached to this Complaint as Exhibit B and is incorporated herein by this reference.

98.  An unknown Internet user identified by the screen of "Jimmy" (hereinafter "Unidentified User Jimmy") logged into the chat room on May 9, 2000 at 8:59 p.m. (GMT).

99.  Unidentified User Jimmy later logged into the chat room as Jimmy2 and Jimmy3.

100. Unidentified User Jimmy logged into the chat room from a computer with an Internet Protocol address of 204.120.54.1.

101. Unidentified User Jimmy made various statements about Plaintiff PatentWizard and Plaintiff Neustel.

102. The various statements made by Unidentified User Jimmy were made in a forum where Plaintiffs and PatentCafe were promoting their respective products and services.

103. The various statements by Unidentified User Jimmy were publicized to various third persons in the chat rooms and exposed Plaintiffs to hatred, contempt, ridicule, and obloquy that had a tendency to injure the Plaintiffs in their occupation.

104. The various statements made by Unidentified User Jimmy are libelous per se.

105. The various statements by Unidentified User Jimmy severely hampered the discussion that was taking place in the chat hosted by Plaintiff Neustel.

106. The various statements by Unidentified User Jimmy amounted to intentional and unjustified interference with the prospective business relationships of the Plaintiffs.

107. The various statements by Unidentified User Jimmy did in fact interfere with the prospective business relationships of the Plaintiffs.

108. The Internet Protocol address of 204.120.54.1 originates from Kinko's Network.

109. Plaintiffs have contacted the Defendant to ascertain the identity of Unidentified User Jimmy, but the Defendant is unable to identify the Renter or the Rental Computer from where the statements originated.

110. Plaintiffs are unable to determine the geographical location of Unidentified User Jimmy.

111. The inability of Defendant Kinko's to identify Unidentified User Jimmy stems from the reckless and intentional failure of Defendant Kinko's to maintain log files of NAT activity for Internet traffic originating from the Rental Computers and their reckless and intentional failure to verify the identity of Renters using their Rental Computers.

112. Plaintiff Neustel has not hosted subsequent chats to promote their services or products for fear of incurring further legal and business injury.

113. Plaintiffs have been fully deprived of their legal remedies against the tortfeasor because of the cloak of privacy created by the Kinko's Network that enables covert and illegal activities against third parties by Renters using the Kinko's Network.

114. Plaintiffs are unable to seek compensatory damages, punitive damages and injunctive relief against Unidentified User Jimmy because of the cloak of privacy created by the Kinko's Network that supports covert activities against third parties by Renters using the Kinko's Network.

115. Plaintiff Neustel has not been asked to provide future chats with PatentCafe or other organizations since the May 9, 2000 incident with Unidentified User Jimmy.

116. Plaintiff Neustel has substantially reduced his postings to InventNet (http://www.inventnet.com) or similar electronic bulletin boards for fear of incurring further legal and business injury.

117. Because Defendant Kinko's did not maintain the proper records of the Renters of its Rental Computers, Plaintiffs are unable to determine the identity of Unidentified User Jimmy.

118. Because Defendant Kinko's did not maintain the proper records of the Renters of its Rental Computers, Plaintiffs are unable to determine if Unidentified User Jimmy is a competitor of the Plaintiffs, or an agent of a competitor, which would allow Plaintiffs to bring unfair competition, interference with contract, and interference with business relations claims against Unidentified User Jimmy.

119. Plaintiff Neustel expended significant amounts of time and resources in attempting to determine the identity of Unidentified User Jimmy.

120. PatentCafe has only made a portion of the transcript from the May 9, 2000 chat room session available for public access upon www.patentcafe.com because of the defamatory statements contained therein.

121. Plaintiffs have been deprived of the publicity, recognition and advertising received from the publishing of chat room transcript upon PatentCafe causing loss of future business for Plaintiffs.

122. Plaintiffs are deprived of receiving referrals from guests who attended the May 9, 2000 chat room session.

123. Plaintiffs' relationship with PatentCafe has been adversely affected by Unidentified User Jimmy's covert postings to the chat room.

124. Defendant Kinko's profited at the Plaintiffs expense from the cyber crimes and tortious activities that Unidentified User Jimmy committed against the Plaintiffs.

125. The design of the Kinko's Network enabled Unidentified User Jimmy, and continues to enable other Renters, with the ability to commit cyber crimes and other damaging activities anonymously without the ability of third parties or government agencies to hold them accountable for their actions.

126. The use of the Kinko's Network by Unidentified User Jimmy has caused irreparable damage to the Plaintiffs reputation and credibility.

127. The use of the Kinko's Network by Unidentified User Jimmy has caused financial harm to the Plaintiffs.

## COUNT ONE: NEGLIGENCE
## FAILURE TO MONITOR COMPUTER NETWORK

128. Plaintiff incorporates Paragraphs 1 through 127 above as if fully set forth herein.

129. Defendant owed a duty of care to the public to monitor the activity of Renters utilizing Rental Computers.

130. Defendant owed a duty of care to the Plaintiffs to monitor and log the activity of Renters utilizing Rental Computers.

131. Defendant Kinko's breached its duty of care by failing to monitor the use of the Kinko's Network by Renters of Rental Computers.

132. Defendant Kinko's breached its duty of care by failing to identify and monitor the Renters who pay money to use its computer network.

133. Defendant Kinko's breached its duty of care by failing to monitor the Rental Computers.

134. The breach of the duty by the Defendant Kinko's was the proximate and legal cause of harm to the Plaintiffs.

135. Because of the breach of the duty by the Defendant Kinko's, the Defendant's have deprived the Plaintiffs of any legal recourse against Unidentified User Jimmy.

136. Because of the breach of the duty by the Defendant Kinko's, the Defendant's have deprived the Plaintiffs of the right to know the identity and location of their accusers.

137. Because of the breach of the duty by the Defendant Kinko's, the Defendant's have deprived the Plaintiffs of the right to seek injunctive relief against Unidentified User Jimmy.

138. The breach of the duty by the Defendant has caused damage to the Plaintiffs.

### COUNT TWO: NEGLIGENCE
### FAILURE TO MAINTAIN PROPER AND ADEQUATE RECORDS

139. Plaintiff incorporates Paragraphs 1 through 138 above as if fully set forth herein.

140. Defendant Kinko's owed a duty of care to the Plaintiffs to maintain proper and adequate records relating to the use of Rental Computers by Renters.

141. Defendant Kinko's owed a duty of care to the public to maintain proper and adequate records relating to the use of Rental Computers by Renters.

142. Defendant Kinko's owed a duty of care to the Plaintiffs to maintain proper and adequate records regarding the identity of the Renters of its Rental Computers.

143. Defendant Kinko's owed a duty of care to the public to maintain proper and adequate records regarding the identity of the Renters of its Rental Computers.

144. Defendant Kinko's breached its duty of care to maintain proper and adequate records by failing to maintain log files relating to the use of Rental Computers by Renters.

145. Defendant Kinko's breached its duty of care to maintain proper and adequate records by failing to maintain log files of the NAT activity on the Kinko's Network.

146. Defendant Kinko's breached its duty of care by failing to maintain adequate records that would allow the Plaintiffs to identify Unidentified User Jimmy and have thereby denied the Plaintiffs the right to face their accuser.

147. The breach of the duty by the Defendant was the proximate and legal cause of harm to the Plaintiffs.

148. Because of the breach of the duty by the Defendant, the Defendant's have deprived the Plaintiffs of any legal recourse against Unidentified User Jimmy.

149. The breach of the duty by the Defendant has caused damage to the Plaintiffs.

## COUNT THREE: SPOLIATION OF EVIDENCE
## NEGLIGENT OBSTRUCTION & INTERFERENCE WITH LEGAL REMEDIES

150. Plaintiff incorporates Paragraphs 1 through 149 above as if fully set forth herein.

151. Defendant Kinko's is aware that Renters of Rental Computers on the Kinko's Network are being used in a way that violates both civil and criminal laws.

152. With full knowledge that the Kinko's Network is being used as a conduit for illegal activity, Kinko's has chosen not to maintain audit logs that would track and monitor the conduct of Renters using the Rental Computers.

153. With full knowledge that the Kinko's Network is being used as a conduit for illegal activity, Kinko's has chosen not to maintain audit logs that would track and monitor the NAT activity of Renters using the Rental Computers.

154. By choosing not to maintain proper records, Defendant Kinko's has negligently destroyed discoverable subject matter for their sole financial benefit.

155. The negligent actions of Defendant Kinko's have deprived the Plaintiffs of their right to face their accusers.

156. Because of the breach of the duty by the Defendant, the Defendant has deprived the Plaintiffs of any legal recourse against Unidentified User Jimmy.

157. Because of the breach of the duty by the Defendant Kinko's, the Defendant has deprived the Plaintiffs of the right to know the identity of their accusers.

158. The Defendants have benefited financially, and continue to benefit, from depriving the Plaintiffs of their rights.

159. The actions by the Defendant have caused damage to the Plaintiffs.

## COUNT FOUR: SPOLIATION OF EVIDENCE
## INTENTIONAL OBSTRUCTION & INTERFERENCE WITH LEGAL REMEDIES

160. Plaintiff incorporates Paragraphs 1 through 159 above as if fully set forth herein.

161. Defendant Kinko's is aware that Renters of Rental Computers on the Kinko's Network are being used in a way that violates both civil and criminal laws.

162. With full knowledge that the Kinko's Network is being used as a conduit for illegal activity, Defendant Kinko's has chosen not to provide audit logs that would track and monitor the conduct of Renters of Rental Computers.

163. With full knowledge that the Kinko's Network is being used as a conduit for illegal activity, Kinko's has chosen not to maintain audit logs that would track and monitor the NAT activity of Renters using the Rental Computers.

164. By choosing not to maintain proper records, Defendant Kinko's has knowingly, intentionally, and purposefully destroyed discoverable subject matter for their sole financial benefit.

165. The actions by the Defendant Kinko's have deprived the Plaintiffs of their right to face their accusers.

166. Because of the breach of the duty by the Defendant, the Defendant has deprived the Plaintiffs of any legal recourse against Unidentified User Jimmy.

167. Because of the breach of the duty by the Defendant Kinko's, the Defendant has deprived the Plaintiffs of the right to know the identity of their accusers.

168. The Defendants have benefited financially, and continue to benefit, from depriving the Plaintiffs of their rights.

169. The actions by the Defendant have caused damage to the Plaintiffs.

## COUNT FIVE: AIDING AND ABETTING A TORT
### DEFAMATION

170. Plaintiff incorporates Paragraphs 1 through 169 above as if fully set forth herein.

171. Defendant Kinko's is aware that Renters of Rental Computers on the Kinko's Network are repeatedly being used in a way that violates both civil and criminal laws.

172. With full knowledge that the Kinko's Network is being used as a conduit for illegal and tortious activity, Defendant Kinko's has chosen not to maintain audit logs that would track and monitor the conduct of the Renters of its Rental Computers who are paying Defendant Kinko's for Internet access.

173. Defendant Kinko's has engaged in a pattern of intentional ignorance regarding the acts of its Renters from which it financially benefits.

174. By their intentional and reckless choice to not monitor, log or otherwise track the Internet activities of their Renters, Defendant Kinko's has substantially assisted Renters with the commission of cyber crimes through the cloak of privacy created by the Kinko's Network.

175. Defendant Kinko's has substantially assisted Renters in their unlawful activity for their own avaricious financial gain.

176. By providing the cloak of privacy to cloak of privacy to Renters, Defendant Kinko's has encouraged Renters to use the Kinko's Network in a manner that violates the law.

177. Unidentified User Jimmy did in fact defame the Plaintiffs.

178. Defendant Kinko's provided the cloak of privacy and the conduit that allowed Unidentified User Jimmy to anonymously defame the Plaintiffs.

179. Defendant Kinko's knew or should have known that Unidentified User Jimmy was using the Kinko's Network to defame the Plaintiffs

180. Because of the gross intentional ignorance displayed by Defendant Kinko's regarding the conduct of their Renters, Defendant Kinko's is charged with full knowledge of Unidentified User Jimmy tortious actions.

181. Defendant Kinko's aided, abetted, and provided substantial assistance to Unidentified User Jimmy in the commission of the tort of defamation against the Plaintiffs.

182. Defendant Kinko's profited from the defamation of the Plaintiffs by Unidentified User Jimmy and continues to profit from the illegal use of the Kinko's Network by Renters of Rental Computers.

183. The actions by the Defendant have caused damage to the Plaintiffs.

## COUNT SIX: AIDING AND ABETTING A TORT
## INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS

184. Plaintiff incorporates Paragraphs 1 through 183 above as if fully set forth herein.

185. Defendant Kinko's is aware that Renters of Rental Computers on the Kinko's Network are repeatedly being used in a way that violates both civil and criminal laws.

186. With full knowledge that the Kinko's Network is being used as a conduit for illegal and tortious activity, Defendant Kinko's has chosen not to maintain audit logs that would track and monitor the conduct of the Renters of its Rental Computers who are paying Kinko's for Internet access.

187. Defendant Kinko's has engaged in a pattern of intentional ignorance regarding the acts of its Renters from which it financially benefits.

188. By their intentional and reckless choice to not monitor, log or otherwise track the Internet activities of their Renters, Defendant Kinko's has substantially assisted Renters with the commission of cyber crimes through the cloak of privacy created by the Kinko's Network.

189. Defendant Kinko's has substantially assisted Renters in their unlawful activity for their own avaricious financial gain.

190. By providing the cloak of privacy to cloak of privacy to Renters, Defendant Kinko's has encouraged Renters to use the Kinko's Network in a manner that violates the law.

191. Defendant Kinko's knew or should have known that Unidentified User Jimmy was interfering with the prospective business relationships of the Plaintiffs

192. Unidentified User Jimmy did in fact interfere with the prospective business relationships of the Plaintiffs.

193. Defendant Kinko's provided the cloak of privacy and the conduit that allowed Unidentified User Jimmy to anonymously interfere with the prospective business relationships of the Plaintiffs.

194. Because of the gross intentional ignorance displayed by Defendant Kinko's regarding the conduct of their Renters, Defendant Kinko's is charged with full knowledge of Unidentified User Jimmy tortious actions.

195. Defendant Kinko's aided, abetted, and provided substantial assistance to Unidentified User Jimmy in the commission of the tort of interference with prospective business relationships against the Plaintiffs.

196. Defendant Kinko's profited from the interference with the prospective business relationships of the Plaintiffs by Unidentified User Jimmy and continues to profit from the illegal use of the Kinko's Network by Renters of Rental Computers.

197. The actions by the Defendant have caused damage to the Plaintiffs.

**WHEREFORE, Plaintiffs requests that the court:**

1. Award Plaintiffs damages for the conduct of the Defendant in the amount of five hundred thousand dollars ($500,000);

2. Award Plaintiffs punitive damages of five million dollars ($5,000,000) for the intentional tortious conduct of the Defendant;

3. Award Plaintiffs injunctive relief prohibiting Defendant from operating the Kinko's Network without maintaining adequate records of its Rental Computers and Renters;

4. Assess costs and attorney fees related to this suit; and

5. Award such other and further relief as the Court deems appropriate.

Dated at Sioux Falls, South Dakota, this _9th_ day of August, 2000.


Matthew McCaulley
Hynes & McCaulley, Prof. LLC
122 South Phillips Avenue, Suite 250
Sioux Falls, SD 57104
matt@sdlawfirm.com

Attorneys for the Plaintiffs


**PLAINTIFFS HEREBY DEMAND TRIAL BY JURY**